T.C. Memo. 2004-61

UNITED STATES TAX COURT

JULIE C. NICHOLS, n.k.a. JULIE C. AMREIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8227-02.                    Filed March 11, 2004.

Julie C. Nichols, pro se.

<u>James A. Kutten</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $99,672
in petitioner's Federal income tax for 1998, which was
subsequently reduced by respondent's concession to $63,344.
After concessions, the issue for decision is whether petitioner
is entitled to relief from joint and several liability under
section 6015(b) or (c).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Washington, Missouri, at the time that she filed her petition.

Petitioner married James M. Nichols (Nichols) on November 19, 1988. Petitioner and Nichols separated in March 2000 and were divorced on January 17, 2001.

Nichols was a member of a group of 12 individuals who won the Connecticut State Lottery drawing on October 28, 1987. Nichols's portion of the lottery prize was $756,540, payable over 20 years in annual installments of $37,827. At the time that she married Nichols, petitioner knew that Nichols had won a lottery and received approximately $30,000 per year in lottery proceeds.

On August 21, 1997, petitioner executed a Certificate of Marital Status that was to be attached as exhibit "B" to a Lottery Prize Assignment Agreement between Nichols and Woodbridge Sterling Capital, LLC. Petitioner inserted her name, address, and Social Security number on the Certificate of Marital Status and dated it and signed it before a notary public. The Certificate of Marital Status expressly stated:

> I consent to my spouse entering into the
> Assignment and furthermore to the application to a

> Court of competent jurisdiction for an appropriate
> order assigning the lottery prize payments to
> Woodbridge Sterling Capital, LLC, or its assigns, in
> accordance with the terms of the Assignment.

The Certificate of Marital Status was thereafter attached to a Lottery Prize Assignment Agreement dated September 18, 1997, between Nichols and Woodbridge Sterling Capital, LLC. Judicial approval of the lottery assignment was obtained on April 8, 1998. The sum of $250,000 was paid to Nichols for the assignment during 1998. Petitioner and Nichols filed a joint Federal income tax return for 1998 but did not report the sale of the lottery rights on that tax return.

The petition in this case, filed by counsel on July 3, 2002, asserted:

> I disagree that I should be liable for any portion of
> the deficiency, as I did not know, or had no reason to
> know, of my former husband's receipt of such proceeds
> and his failure to report the same. Facts supporting
> my position are more thoroughly described in my
> statement in support of Form 8857, Request for Innocent
> Spouse Relief, attached hereto as Exhibit A, which I
> have filed along with Form 8857.

The attached Form 8857, Request for Innocent Spouse Relief, prepared by counsel, specifically disclaimed a request for equitable relief by inserting an "X" to indicate "No" in response to the question:

> Do you have an <u>Underpayment of Tax</u> (that is, tax that
> is properly shown on your return but not paid) or
> another tax liability that qualifies for <u>Equitable
> Relief</u> (see page 4)?

The attachment to the petition and to the Form 8857 repeated petitioner's denial of knowledge of the sale of the lottery proceeds and referred to her limited education, her disability as a result of a 1995 automobile accident, her use of medications, her lack of involvement in financial affairs during her marriage to Nichols, her lack of participation in preparation of the 1998 tax return, and Nichols's subsequent imprisonment as a result of an unrelated matter.  Among the allegations were the following:

> 14.  I did not discover that James had actually sold his lottery rights until January 15, 2002.  This information was given to me by a mutual acquaintance who was James' former business partner.  Even as of this date, I still am not certain as to when (or even if) James sold his lottery rights.

> *   *   *   *   *   *   *

> 22.  When I allegedly signed the '98 return, I had no knowledge or reason to know of the alleged sale of James' lottery rights and, even if I had, I would not have possessed the mental capacity to even notice that such proceeds were not reported on the '98 return or even that they should have been reported.

> 23.  I did not know, nor did I have reason to know, of James' failure to report the income from the alleged sale of his lottery rights on the '98 return.

### OPINION

After this case was set for trial, counsel who filed the petition on behalf of petitioner moved to withdraw.  Petitioner did not object, and the motion to withdraw was granted.  During trial, as discussed below, it became apparent that petitioner's execution of the Certificate of Marital Status, as an incident to

Nichols's sale of his lottery proceeds, established that petitioner knew or had reason to know of the sale of his lottery rights. Because the testimony of petitioner with respect to other aspects of her claim suggested that equitable relief under section 6015(f) might have been the better course for her to pursue, the Court allowed the parties, after trial, to address whether petitioner should be allowed to amend her petition to seek relief under section 6015(f). Respondent filed a memorandum setting forth respondent's position that petitioner should not be allowed to amend her petition, even though respondent argued that a subsequent claim for relief under section 6015(f) would be barred by res judicata and application of section 6015(g)(2). Though invited to do so, petitioner did not make a motion to amend her petition. As a result, the only issues in this case are petitioner's eligibility for relief under section 6015(b) and (c).

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due for the taxable year of the joint return. Sec. 6013(d)(3). A spouse may, however, seek relief from joint and several liability by following procedures established in section 6015.

Under section 6015(b), a taxpayer may be relieved from liability on a joint return if, among other things:

> SEC. 6015(b).  Procedures For Relief From Liability Applicable to All Joint Filers.--
>
> > (1) In general.--Under procedures prescribed by the Secretary, if--
> >
> > > *    *    *    *    *    *    *
> >
> > > (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

Section 6015(c) limits the liability of a taxpayer, such as petitioner, who is no longer married and who makes the appropriate election.  Section 6015(c) provides:

> SEC. 6015(c).  Procedures To Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.--
>
> > *    *    *    *    *    *    *
>
> > (3) Election.--
> >
> > > *    *    *    *    *    *    *
> >
> > > (C) Election not valid with respect to certain deficiencies.--If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion).  This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

In view of petitioner's admitted execution of the Certificate of Marital Status, which expressly referred to Nichols's Lottery Prize Assignment Agreement, we cannot conclude that she did not know or have reason to know that there was an understatement on a tax return that did not report the proceeds of the sale of the lottery rights.

Moreover, respondent has established that petitioner had actual knowledge of the item giving rise to the deficiency at the time that she signed the return. Although petitioner disavows involvement with the transaction and with the return preparation, she has not established that she signed the return under duress. Petitioner testified:

> It was not uncommon for me to take paper from my ex-husband's business during our marriage. I would take them next to Cheryl Coleman, who was a realtor, and she would notarize statements. I never read the statements I was filing. I would make deposits at his bank. This was the only involvement I had with his business.

Petitioner's argument that she did not read what she was signing is unpersuasive and unavailing. She was articulate in presenting her case at the time of trial, and she was obviously able to function in a normal manner despite her claimed medical disabilities. She cannot be excused from the implications of the Certificate of Marital Status, and she has not satisfied the requirements for relief from joint and several liability.

Decision will be entered for respondent.